IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JET MAINTENANCE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-263-SLP |
| ) | |
| DEVON ENERGY PRODUCTION ) | |
| COMPANY, L.P., et al., ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Before the Court is Defendants' Motion to Reconsider or, in the Alternative, Motion to Certify Question to the Oklahoma Supreme Court [Doc. No. 31]. The matter is fully briefed. *See* Pl.'s Resp. [Doc. No. 35] and Defs.' Reply [Doc. No. 36]. For the reasons that follow the Court GRANTS Defendants' Motion to Reconsider and DISMISSES Plaintiff's Complaint.

**I.     Introduction**

This action arises out of a Master Service and Supply Agreement (MSSA) entered into between Plaintiff, Jet Maintenance, Inc. (JMI), and Defendants, Devon Energy Production Company, L.P., Devon Gas Services, L.P. and Southwestern Gas Pipeline, Inc. (collectively, Devon). The Court previously denied Devon's Motion to Dismiss and ruled that Okla. Stat. tit. 15, § 221, Oklahoma's "construction agreement" anti-indemnity statute applied to the MSSA. Devon moves for reconsideration of that ruling.[1]

---

[1] The ruling was issued by United States District Judge Robin J. Cauthron. Upon Judge Cauthron's retirement, the case was reassigned to the undersigned.

## II.     Governing Standard

As an initial matter, the Court addresses the appropriate scope of the Court's review on reconsideration.[2] JMI argues that the Court's review is confined to "one of the three grounds set forth in Servants of Paraclete v. Does, 204 F.3d 1005 (10th Cir. 2000)." Pl.'s Resp. at 3. Those three grounds are: (1) an intervening change in controlling law, (2) new evidence previously unavailable, or (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete*, 204 F.3d at 1012.

JMI's statement of the governing standard, however, is incorrect. The Tenth Circuit has "distinguished the *Servants of the Paraclete* principles, which apply to a motion for reconsideration after a final judgment, from a district court's discretionary reconsideration of an interlocutory order." *Luo v. Wang*, 71 F.4th 1289, 1298-99 (10th Cir. 2023) (cleaned up). Here, the Court's order under reconsideration is an interlocutory order. *See, e.g., Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1121 (10th Cir. 2019) (observing "[t]he denial of a Rule 12(b)(6) motion to dismiss is not a final order" and therefore does not provide an independent basis for interlocutory appeal (quoting *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017))). Thus, the Court's review is not constricted by the *Servants of the Paraclete* principles. *Id*. at 1299. Instead, the Court "can review the earlier ruling de novo

---

[2] The Federal Rules of Civil Procedure "recognize no motion for reconsideration." *Hatfield v. Bd. of Cnty Comm'rs*, 52 F.3d 858, 861 (10th Cir. 1995). Even though the Rules do not expressly recognize a motion for reconsideration, such motions, nonetheless, are permitted because they fall within a court's inherent power to reconsider its interlocutory rulings. *Spring Creek Expl. & Prod. Co. LLC v. Hess Bakken Investment, II, LLC,* 887 F.3d 1003, 1023-24 (10th Cir. 2018) (citing, inter alia, Fed. R. Civ. P. 54(b)).

2

and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether." *Dolan v. Fed. Emergency Mgmt. Agency*, -- F. Supp. 3d --, No. CIV-23-0869 JB/JFR, 2025 WL 2023315 at *12 (D. N.M. July 18, 2025).[3]

As discussed below, the parties agree that the primary basis for the Court's decision is incorrect. Reconsideration is certainly warranted on that ground. And the Court otherwise respectfully, but fundamentally, disagrees with the result reached in the prior decision by the previously assigned judge.[4]

### III.   Factual Allegations of the Complaint / JMI's Claim for Declaratory Relief

Pursuant to the MSSA, Devon employed JMI "[i]n connection with the construction or operation of the properties and facilities for the exploration for, or the development, or production of, oil, gas, sulfur, or other minerals." MSSA at 2.[5] The MSSA includes an indemnification provision which requires JMI to indemnify Devon for personal injury to any employee of JMI arising out of or relating to the MSSA.

---

[3] Given the Court's inherent authority to review interlocutory orders, JMI incorrectly asserts that the filing of its Motion for Summary Judgment [Doc. No. 34] "effectively moot[s]" Devon's request for reconsideration. *See* Resp. at 5.

[4] The "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1252 (10th Cir. 2011).

[5] The MSSA is attached to the Complaint. *See* Doc. No. 1-1.

3

Andrew West was an employee of JMI and was killed in an accident in the course and scope of his employment for JMI. The estate of Andrew West sued Devon in a Texas state-court action.

JMI then brought this action seeking a declaration that its indemnity obligations under the MSSA are unenforceable pursuant to Oklahoma's construction anti-indemnity statute. Specifically, JMI seeks a declaration from this Court that the indemnification provision is void because the MSSA "would be considered a 'construction agreement' under 15 O.S. § 221(A)." Compl., ¶ 24. Pursuant to the relevant Oklahoma statute, any provision in a construction agreement that requires indemnification for damage arising out of the death of a person due to the negligence or fault of the indemnitee "is void and unenforceable as against public policy." Okla. Stat. tit. 15, § 221(B).[6]

Devon moved to dismiss the Complaint and argued, inter alia, that § 221 applies only to "construction sites" (not at issue here) and not "drilling well sites" (at issue here). *See* generally Defs.' Mot. [Doc. No. 7] at 18. But the Court sided with JMI, finding Devon's reading of the statute was unduly narrow. *See* Order [Doc. No. 10].

## IV.   Discussion

Section 221 is entitled **"'Construction agreement' defined – Limitations on liability arising out of death or bodily injury void – Exceptions**. The statute provides in relevant part:

> For purposes of this section, "construction agreement" means a contract, subcontract, or agreement for construction, alteration, renovation, repair, or

---

[6] Otherwise, indemnification provisions are expressly recognized under Oklahoma law. *See, e.g.*, Okla. Stat. tit. 15, §§ 421-430.

4

> maintenance of any building, building site, structure, highway, street, highway bridge, viaduct, water or sewer system, or other works dealing with construction, or for any moving, demolition, excavation, materials, or labor connected with such construction.

Okla. Stat. tit. 15, § 221(A).

Focusing on the word "structure," the Court cited dictionary definitions of that word and found that "[i]t is clear that an oil drilling rig is a 'structure.'" Therefore, the Court concluded that "§ 221 would apply to the MSSA and the indemnity agreement therein is void." *See* Doc. No. 10 at 2.

Devon challenges this ruling as erroneous and JMI concedes as much stating that "the Court made a mistake by conflating [JMI's] activities at the well site with the erection or use of a drilling rig." Resp. [Doc. No. 35] at 4. But JMI argues that the Court nonetheless reached the correct result and points to the Court's "valid alternative basis for reaching the same result." *Id*. at 5.

The Court alternatively found that the MSSA covered "other works dealing with construction" and, therefore, § 221 would apply to the MSSA and void the indemnity provision. *See* Doc. No. 10 at 3. In support of that conclusion, the Court found: "it is undisputed that the purpose of the MSSA was to construct a site for the erection of a drilling rig" and that "as part of that work" JMI was required to construct "a road, fence, well pit, lay sod, and do other work to prepare the site." *Id*.

With respect to the Court's alternative holding, the relevant statutory language is necessarily condensed to the following:

"[C]onstruction agreement" means a contract . . . **for** construction **of** any . . . ***other works dealing with construction***."

§ 221(A) (emphasis added).

Devon contends that "[t]he generic phrase 'or other works dealing with construction' does not expand the specific list to any possible thing that can be built, maintained, or repaired." Mot. at 14. According to Devon, "[t]o find otherwise would both misapply the word 'works' and render the specific list meaningless." *Id*. The "specific list" to which Devon refers is the statute's listing of "building, building site, structure, highway, street, highway bridge, viaduct, water or sewer system." § 221(A).

At a fundamental level, the Court agrees with Devon that any activity associated with the well pad is simply outside the scope of the statute. Contracts pertaining to the establishment, operation or maintenance of oil and gas drill sites are simply not akin to construction agreements. Accordingly, trying to fit the performance of duties associated with such contracts into the statutory terms addressing performance of duties associated with construction agreements is like trying to force a square peg into a round hole.

The Court finds persuasive the decisions of other courts to have addressed the applicability of a construction anti-indemnity statute. In *Williams v. Inflection Energy, LLC*, No. 4:15-00675, 2016 WL 4429998 (M.D. Pa. Aug. 22, 2016), the court addressed Colorado's virtually identical construction anti-indemnity statute and concluded that a contract for the operation of a drill site did not fall within the ambit of the statute. *Id*. at

6

*6.[7]   In reaching this conclusion the court noted that where oil and gas operations are intended to be the subject of anti-indemnification statutes, states have specifically enacted statutory provisions addressed to "oil wells and oilfields." *Id*. citing Tex. Civ. Prac. & Rem. Code Ann. § 127.001-007; La. Rev. Stat. Ann. § 9:2780(B).  But Colorado had not done so.  And, therefore, the court refused to extend the applicability of the construction agreement, anti-indemnification statute.

Utilizing a similar rationale and citing *Williams* with approval, another judge in this judicial district has found Oklahoma's anti-indeminification statute does not extend to oil and gas service agreements.  *Chesapeake Operating, LLC v. C.C. Forbes, LLC*, 660 F. Supp. 3d 1140, 1146, 1147 & n. 11 (W.D. Okla. 2023).  The court specifically rejected the argument that the statutory term "structure" was "intended to refer to oil and gas wells or workover rigs." *Id*. at 1146.

The court based its holding, in part, on the legislative history surrounding § 221, including the removal of references to oil and gas agreements in the statute prior to its enactment and failed attempts to extend § 221 to include oil and gas agreements one year after its enactment.  *Id*. at 1146-47; *see also Continental Res. Inc. v. Rink Constr*., Inc., 352

---

[7] Colorado law defines a "construction agreement" as,

> a contract, subcontract, or agreement for materials or labor for the construction, alteration, renovation, repair, maintenance, design, planning, supervision, inspection, testing, or observation of any building, building site, structure, highway, street, roadway bridge, viaduct, water or sewer system, gas or other distribution system, or other work dealing with construction or for any moving, demolition, or excavation connected with such construction.

Colo. Rev. Stat. § 13-21-111.5(6)(e)(I).

7

F. Supp. 3d 928, 934 (D.N.D. 2018) (construing Okla. Stat. tit. 15, § 221(A) and concluding that under the "plain language" of the statute, the definition of "construction agreement" did not "encompass service work on oil wells").

For substantially the same reasons, this Court rejects JMI's argument that § 221 renders the indemnity provisions of the MSSA void and unenforceable. The well pad at issue does not fall within the parameters of the term "structure," as that term is utilized in the context of the statute. Nor is the well pad a "*building* site." And the Court agrees with Devon that the interpretation of "other works" as urged by JMI is overly broad and would lead to absurd results. These considerations, coupled with the legislative history, lead the Court to conclude that the MSSA is not a construction agreement under § 221.

## V. Conclusion

In sum, the Court finds, upon reconsideration, that the MSSA is not a construction agreement for purposes of Okla. Stat. tit. 15, § 221(A). Accordingly, the Court GRANTS Defendants' Motion to Reconsider [Doc. No. 31].[8] The Court necessarily, therefore, GRANTS Defendants' Motion to Dismiss [Doc. No. 7]. A separate judgment of dismissal shall be entered.

IT IS SO ORDERED this 23rd day of September, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[8] Based on this ruling, it is not necessary for the Court to address Devon's alternative request for certification of issues to the Oklahoma Supreme Court.